**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SHARI MORTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LELAND DUDEK[1], | ) |
| Acting Commissioner of the Social Security | ) |
| Administration, | ) |
| Defendant. | ) |

No. 4:23-CV-0588 PLC

**MEMORANDUM AND ORDER**

Plaintiff Shari Morton seeks review of the decision of Defendant Acting Social Security Commissioner Leland Dudek denying her applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.      Background and Procedural History**

On November 14, 2018, Plaintiff who was born on August 2, 1959, filed an application for SSI, alleging she was disabled as of November 1, 2016, as a result of stroke, diabetes, high blood pressure, and chest pain.[2] (Tr. 123-124, 131, 305-310) The Social Security Administration (SSA) denied Plaintiff's claim, and she filed timely a request for a hearing before an administrative law judge (ALJ).  (Tr. 123-131, 166-168, 211)  The SSA granted Plaintiff's request for review and conducted a hearing on March 5, 2020. (Tr. 147-169)

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 17, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] Plaintiff previously filed claims for benefits in October 2010, July 2011, August 2012, August 2015, and March 2018. (Tr. 124)

On September 18, 2020, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 132-151) In that decision, the ALJ found Plaintiff had the severe impairments of anxiety, "residuals from a stroke[,]" and adjustment disorder, and the non-severe impairments of hypertension and diabetes mellitus. (Tr. 137-138) The ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 138) The ALJ found Plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 CFR § 416.967(c) except that she could: (1) frequently climb ramps and stairs; (2) occasionally climb ladders, ropes, and scaffolds; (3) frequently handle with the right hand; and (4) complete simple, routine repetitive tasks not at a production rate pace and with few changes in the work setting. (Tr. 140)

Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which vacated the ALJ's decision and remanded the cause for a new hearing and further development of the record. (Tr. 152-158, 219)  The Appeals Council directed the ALJ to obtain updated medical evidence concerning Plaintiff's alleged upper extremity impairment, provide "further consideration of [Plaintiff's] maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations[,]" and, if warranted, obtain supplemental evidence from a vocational expert. (Tr. 155)

On remand, the ALJ conducted supplemental hearings in November 2021 and May 2022, and sent Plaintiff for a physical consultative examination. (Tr. 70-83, 84-95, 957-976)   On June 15, 2022, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 9-46) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-6, 300-301) Plaintiff has exhausted all administrative remedies, and the ALJ's June 2022 decision stands as the Commissioner's final decision.  Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.    **Evidence Before the ALJ**

A.    Plaintiff's Testimony

Plaintiff testified at each hearing conducted by the ALJ, including hearings on March 5, 2020; November 18, 2021; and May 19, 2022.

1.    March 5, 2020 Hearing

Plaintiff completed the 12th grade and has not worked since 2002. (Tr. 54-55) Plaintiff helped care for her father, including feeding, clothing, and bathing him, from 2002 until his death in October 2019. (T.R.  52-53, 55) Plaintiff has lived alone since her father's death. (Tr. 52) Plaintiff has back pain "all the time" and "flank pain" on her right side. (T.R.  59) Plaintiff "can hardly get up," is unable to bend "too far," and cannot squat due to her back pain. (Tr. 59) Plaintiff "can't walk that far" due to pain in her back, neck, side, and left arm. (Tr. 59) The pain in her neck and back "sometime[s]" affects her ability to lift. (Tr. 60) Plaintiff continues to experience numbness in her face after suffering a "light stroke" in 2018. (Tr. 60)

Plaintiff's medical provider suggested she wear a splint on her right hand for her carpal tunnel syndrome. (TR. 61) Plaintiff did not have a splint so instead she wrapped her hand in an ACE bandage. (Tr. 60-61) Plaintiff experiences numbness in her right thumb and index finger, is unable to bend those fingers, and feels pain in her right hand and arm. (TR. 62) Plaintiff can sweep and do the dishes, but her son also helps do these chores and the yardwork. (Tr. 63)

2.    November 18, 2021 Hearing

Plaintiff testified her medical provider recently prescribed some a new medication, Lantus, for her diabetes. (Tr. 76) Plaintiff wears splints on both wrists to alleviate pain in her fingers, arms, and shoulders. (Tr. 77) Plaintiff has not done physical or occupational therapy for her wrist condition but does do "exercise" provided by her docter which "really helps." (Tr. 77) Plaintiff's

3

physician advised her that she did not need to return for her diabetes so long as her medication was working. (Tr. 78) Plaintiff ran out of her prescription to treat her kidney condition a year earlier and was planning on following up with her physician because she believed her kidney function was declining. (Tr. 78) Plaintiff testified she is unable to stoop due to back and knee pain. (Tr. 79) Plaintiff's back and knee pain persists despite doing exercises provided by her doctor. (Tr. 79)

### 3. May 19, 2022 Hearing

Plaintiff continued to have "problems" with her neck, shoulder, and the right side of her back. (Tr. 88) Plaintiff testified her back pain limits her to walking for a half a mile or 45 minutes and affects her ability to lift objects. (Tr. 88) Plaintiff's testified her coronary artery disease caused dizziness, shortness of breath, and made physical activity and lifting more difficult. (Tr. 89) It is difficult for Plaintiff to climb steps due to knee pain. (Tr. 89-90) Plaintiff stated she can carry between 10 and 20 pounds but did not think she could carry 50 pounds. (Tr. 90)

### B. Prior Administrative Medical Findings of the State Agency Consultants

The SSA's Disability Determination Explanation denying Plaintiff's initial claim for benefits contains the opinions of three state agency consultants. Nancy Ceasar, M.D. opined Plaintiff had the medically determinable impairments of hypertension, diabetes mellitus, "late effects of injuries to the nervous system," and neurocognitive disorders, but that none of these impairments were severe. (Tr. 118) Dr. Ceasar found Plaintiff had no residual complications from her stroke. (Tr. 117-118) Renu Debroy, M.D. concluded Plaintiff had the severe impairments of hypertension and diabetes mellitus, and the non-severe impairment of ischemic heart disease. (Tr. 129) Dr. Debroy found no functional limitations associated with these impairments. (Tr. 129-130)

James Morgan, Ph.D., the psychological consultant, found Plaintiff suffered from a non-severe neurocognitive disorder.  (Tr. 120) Dr. Morgan concluded Plaintiff's mental impairment

did not result in any limitations in the four broad functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 119)

### C.  Opinions of the Consultative Examiners

#### 1.  Dr. Ahmad's Opinion

In July 2020, Aqeeb Ahmad, M.D. performed a psychiatric consultative evaluation of Plaintiff.  (Tr. 875) Dr. Ahmad observed Plaintiff to be mildly depressed and anxious. (Tr. 877) Plaintiff's affect was congruent, and her speech was logical and sequential. (Tr. 877)  Although Plaintiff reported some visual and auditory hallucinations, she was oriented to self, place, time, and the situation. (Tr. 877) Plaintiff's abstract thinking was intact and she exhibited fair insight. (Tr. 877) Dr. Ahmad assessed Plaintiff with "adjustment disorder of adult life with mixed emotions." (Tr. 877) With respect to Plaintiff's ability to understand, remember and apply information, Dr. Ahmad concluded Plaintiff's short-term memory was "adequate" but that her immediate and long-term memory was "somewhat impaired." (Tr. 878-79) Dr. Ahmad found Plaintiff's ability to interact with others was "fair" and that she could manage her own funds. (Tr. 878) Dr. Ahmad concluded that Plaintiff's concentration appeared adequate during the interview but that her ability to persist and maintain pace was limited by her physical illness and absence from the workplace. (Tr. 878)

#### 2.  Dr. Massay's Opinion

Irim Massay, M.D. performed a physical consultative examination of Plaintiff in January 2022. (Tr. 957) During the examination, Plaintiff reported being able to sit without difficulty, walk for one hour, stand for one hour, and lift approximately fifty pounds. (Tr. 957) Plaintiff exhibited normal gait and stance, and could tandem walk, heel/toe walk, and squat. (Tr. 959) Plaintiff could

hop on each foot but with pain in her right knee. (Tr. 959) Plaintiff needed no assistance changing and getting on or off the exam table, and was able to rise from her chair without difficulty. (Tr. 959) Plaintiff's physical examination was largely unremarkable, although Dr. Massay noted mild prominence of DIP joints bilateral in the hands but no redness, heat, effusion, or tenderness of the joints. (Tr. 960) Plaintiff's hand and finger dexterity was intact, and she exhibited full pinch strength and only mild diminished grip strength, 4/5 bilaterally. (Tr. 961, 974-75) Imaging of Plaintiff's lumbar spine demonstrated mild disc space narrowing at L2-L3 but spacing was otherwise "well maintained." (Tr. 961) Dr. Massay observed ossification medial to the margin of the medial femoral collateral ligament, likely from a prior injury, in Plaintiff's left knee. (Tr. 961) The joint spacing was well maintained in both knees. (Tr. 961) Imaging of Plaintiff's hands demonstrated that her joint spaces were well maintained and no evidence of fracture, dislocation, or bony lesions. (Tr. 961) Plaintiff exhibited full range of motion in her shoulders, elbows, wrists, knees, hips, and cervical and lumbar spines. (Tr. 974-75) Plaintiff had full strength in her lower and upper extremities. (Tr. 974-75) Plaintiff's straight leg raising test was negative. (Tr. 975)

Based on his examination, Dr. Massay opined Plaintiff could frequently lift and carry up to fifty pounds but never more, and could sit for 4 hours, stand for 2 hours, and walk for 2 hours in an 8-hour day. (Tr. 968-969) Dr. Massay stated Plaintiff's ability to lift and carry was limited by her neck and shoulder pain but did not cite to any medical or clinical findings in support of his limitations. (Tr. 968-69)  Dr. Massey opined Plaintiff could frequently handle, finger, feel, push and pull, and could occasionally reach in all directions bilaterally. (Tr. 970) In support of these limitations, Dr. Massay stated Plaintiff's "shoulder pain" limited her function despite Plaintiff's range of motion remaining intact. (Tr. 970) He opined Plaintiff could occasionally climb ramps

and stairs but never climb ladders and scaffolds, and could never balance, stoop, kneel, crouch and crawl as a result of Plaintiff's dizziness, and shoulder and knee pain. (Tr. 971)

### D.  Evidence from the Vocational Expert

The ALJ sent Vocational Expert John Stephen Dolan interrogatories in February 2022. (Tr. 499-502) The ALJ asked Mr. Dolan to consider a hypothetical individual with Plaintiff's age and education, and is able to perform medium work with the following limitations:

> Frequently climb ramps and stairs, occasional ladders[,] ropes and scaffolds, frequently handle with bilateral hands, who can learn[,] remember and carry out simple routine tasks, is able to use reason and judgment to make simple work related decisions, no jobs that require a high production rate pace, with only gradual changes in work settings and duties.

(Tr. 500)

Mr. Dolan concluded that such an individual could perform jobs such as kitchen helper, hospital cleaner, and counter supply worker. (Tr. 505) Mr. Dolan responded that the "number of kitchen helpers and counter supply workers has been significantly reduced to eliminate those found in very busy restaurants and cafeterias, leaving those where [the] worker is not pressed for time and therefore does not have to work at a fast pace" and leaving those workers which could be off task as much as 20 percent of the time without negatively affecting productivity. (Tr. 505)

Plaintiff's counsel responded that the ALJ should give no weight to Mr. Dolan's responses as the hypothetical posed was inconsistent with Dr. Massay's findings and opinions respecting Plaintiff's functional limitations. (Tr. 510) Plaintiff requested a supplemental hearing with a different vocational expert. (Tr. 510)

The ALJ partially granted Plaintiff's request and held a supplemental hearing on May 19, 2022, at which Mr. Dolan testified.  (Tr. 91) At the hearing, Mr. Dolan clarified the figures he provided with respect to the number of positions available for each job. (Tr. 91-92) Mr. Dolan

testified that the figures he provided accounted for any reduction of job numbers based on the individual being off task fifteen percent of the day and that did not include jobs requiring a "firm and rapid production pace." (Tr. 92)

E.   Medical Records

The record also includes medical records dating from June 1, 2009 through December 1, 2021.[3] (Tr. 519-1071)

### III.   Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1); 42 U.S.C. §1381a.  The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months." 42 U.S.C. § 1382c (a)(3)(A); See also 20 C.F.R. § 416.905(a).  The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process.  See 20 C.F.R. § 416.920(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity.  Id.  Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(a), (c).  "The sequential evaluation process may be terminated at step two only when

---

[3] Relevant medical records are discussed in detail below.

the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920 (d), (e).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. 404.1545(a)(1)); see also 20 C.F.R. §§ 416.920(e), 416.945(a)(1).  RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. § 416.920(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step.  McCoy, 648 F.3d at 611; 20 C.F.R. § 416.920(f).

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 416.920(a), (g);

416.960(c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled.  20 C.F.R. § 416.920(g).

## IV.    ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since November 14, 2018, the application date; and (2) had the severe impairments of anxiety disorder, adjustment disorder, "coronary artery disease with residual symptoms status-post stroke," degenerative disc disease of the lumbar spine, left knee ossification in the region of the medial femoral condyle ligament, and bilateral carpal tunnel syndrome. (Tr. 17) The ALJ concluded Plaintiff had the non-severe impairments of hypertension, diabetes mellitus, blurry vision, hyperlipidemia, and chronic kidney disease. (Tr. 18-20)

The ALJ completed the psychiatric review technique prescribed by the regulations for assessing the severity of Plaintiff's mental impairments.[4] In doing so, the ALJ considered the medical records and opinions, and Plaintiff's testimony and self-reported activities of daily living, and concluded that Plaintiff had: (1) a moderate limitation in the functional areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and of adapting or managing oneself; and (2) a mild limitation in the functional area of interacting with others. (Tr.  22-24) At step three, the ALJ determined Plaintiff did not have an impairment or

---

[4] When a claimant has a mental impairment, the Social Security Act requires the ALJ to employ the psychiatric review technique when evaluating the severity of the claimant's mental impairments. Cuthrell v. Astrue, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520a(a), 416.920a(a)). The psychiatric review technique requires the Commissioner to "first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." Id. at 1118 (citing 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1)). The Commissioner then rates "the degree of functional limitation" in the following four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 416.920a(c).

10

combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr.  20)

Based on her review of the record, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr.  25) The ALJ found Plaintiff's alleged limitations were not supported by the medical evidence, including treatment notes frequently demonstrating unremarkable physical examinations, and Plaintiff's conservative treatment and reported activities of daily living. (Tr. 26-29)

The ALJ found the prior administrative medical findings of the State agency medical consultants, Dr. Ceasar, Dr. Debroy, and Dr. Morgan, that Plaintiff had no severe impairments or restrictions to her RFC as inconsistent with the medical evidence and unpersuasive. (Tr. 30) The ALJ concluded the July 2020 opinion of psychological consultative examiner Dr. Ahmad that Plaintiff had difficulty understanding, remembering, and applying immediate and long-term information; a fair ability to interact with family; and decreased ability to maintain pace, to be "generally consistent" with the doctor's observations during the examination and the additional evidence of record and, thus, persuasive.  (Tr. 30-31) However, the ALJ found Dr. Massay's opinion as to Plaintiff's functional limitations was not supported by his objective findings and inconsistent with the record as a whole and, thus, was unpersuasive. (Tr. 27-28, 31-32)

The ALJ determined Plaintiff had the RFC to perform medium work as defined in 20 CFR 416.967(c)[5] with the following additional exertional and non-exertional limitations:

---

[5] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 CFR §416.967(c). Further, the regulation also incorporates the definition of medium work as found in the Dictionary of Occupational Titles published by the Department of Labor, which defines the phrase as "[e]xerting 20 to 50 pounds of force

frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She can frequently handle with her hands, bilaterally. She can learn, remember, and carry out simple, routine tasks. She can use reason and judgment to make simple work-related decisions. She cannot perform jobs that require a high production rate pace. She can tolerate only gradual changes in her work setting and duties.

(Tr. 24)

At step four, the ALJ found Plaintiff had no past relevant work. (Tr. 33) Based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony and interrogatory responses, the ALJ found Plaintiff was able to perform jobs that existed in significant numbers in the national economy, such as kitchen helper, hospital cleaner, and counter supply worker. (Tr. 34-35) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 35)

## V.    Discussion

Plaintiff argues the ALJ's physical RFC determination is not supported by substantial evidence because: (1) it is not supported by any medical opinion, (2) the ALJ rejected Dr. Massay's medical opinion which was the only medical opinion that specified restrictions, (3) the ALJ discounted Plaintiff's testimony, and (4) the ALJ failed to acknowledge or rule on Plaintiff's request for a supplemental hearing with a medical expert to help clarify the evidence of record. [ECF No. 18] Plaintiff contends the evidence adduced after the Appeal Council's remand of the ALJ's first determination and the "additional identification of impairments regarding [Plaintiff's] coronary artery disease, degenerative disc disease of the lumbar spine, and left knee joint disease" should have resulted in a RFC of, at most, light work. [ECF No. 18] Plaintiff further contends that

---

occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects." Dictionary of Occupational Titles, Appendix C (4th Ed., Rev. 1991).

Social Security Rule 83-10 further explains that medium work involves standing or walking for "approximately 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (Soc. Sec. Admin. Jan. 1, 1983).

the ALJ erred in concluding that Plaintiff's diabetes mellitus was not a severe impairment. [ECF No. 18]

The Commissioner responds that the ALJ properly evaluated the medical opinion evidence, the objective medical evidence, and Plaintiff's subjective complaints of disabling symptoms and self-reported activities of daily living in determining Plaintiff's RFC. [ECF No. 22] The Commissioner asserts the ALJ thoroughly reviewed the objective medical evidence and properly found that Plaintiff's complaints of disabling symptoms were not entirely consistent with the evidence. [ECF No. 22] The Commissioner further contends the ALJ did not error in concluding Plaintiff's diabetes mellitus was not a severe impairment because the treatment records demonstrate that Plaintiff's diabetes did not have a more than a minimal impact on her ability to do basic work activities and, even if the ALJ did err in finding Plaintiff's diabetes was non-severe, the error was not prejudicial because the ALJ considered Plaintiff's severe and non-severe impairments in determining Plaintiff's RFC. [ECF No. 22]

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  RFC

Plaintiff challenges the ALJ's determination of her RFC. RFC is the most a claimant can do in a work setting despite that claimant's physical or mental limitations. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 416.945(a)(1). The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." Kraus v. Saul, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015)); 20 C.F.R. § 416.945(a)(1).

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, "a claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). "An administrative law judge may not draw upon his own inferences from medical reports." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

14

1. Medical Opinion Evidence

Plaintiff claims the ALJ's RFC determination is not supported by substantial evidence because she "rejected [Dr. Massay's medical opinion,] the only medical opinion in the record that… specif[ied] restrictions" and she "relied on no supportive medical opinions[.]" [ECF No. 18] With respect to the ALJ's evaluation of Dr. Massay's medical opinion, Plaintiff observes that "[i]n rejecting the medical opinion of Dr. Massay, the ALJ found that his limitations were not supported by his findings on examination nor the objective medical evidence." [ECF No. 18] Plaintiff, however, provides no substantive argument as to why she believes the ALJ's evaluation of Dr. Massay's opinion was flawed or is otherwise not supported by the record.

The Commissioner responds that the ALJ properly assessed the persuasiveness of Dr. Massay's opinion because his opinion was unsupported by his objective findings and inconsistent with the other evidence of record. [ECF No. 22] The Commissioner further contends that the ALJ relied on a medical opinion in determining Plaintiff's RFC, specifically relying on Dr. Ahmad's medical opinion. [ECF No. 22]

Dr. Massay opined that Plaintiff could: (1) frequently lift and carry 50 pounds but never more; (2) sit for 4 hours, stand for 2 hours, and walk for 2 hours in an 8-hour day; (3) frequently handle, finger, feel, push and pull; (4) occasionally reach in all directions bilaterally and climb ramps and stairs; and (5) never climb ladders and scaffolds or balance, stoop, kneel, crouch and crawl. (Tr. 968-971) For claims filed on or after March 27, 2017, such as Plaintiff's claim, the regulations have been amended to eliminate the treating physician rule. The new regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920c. Rather, the ALJ will consider all medical opinions

according to several enumerated factors: supportability, consistency, relationship with the claimant (e.g., length, frequency, purpose, and extent of treatment), and specialization. Id. The most important factors are supportability and consistency. Id.

The ALJ found Dr. Massay's opinion was unpersuasive because it was not supported by his objective findings. Specifically, the ALJ noted that Dr. Massay limited Plaintiff's ability to reach due to her shoulders, yet he observed full range of motion in her shoulders. (Tr. 27-28, 31-32, 957-977) Although Dr. Massay imposed limitations on Plaintiff's ability to balance, stoop, kneel, crouch and crawl, he did not identify any severe neurological or musculoskeletal findings to support these limitations. (Tr. 27-28, 31-32, 957-977) Dr. Massay also limited Plaintiff's standing and walking to 2 hours each per day, but noted that she had normal range of motion in her spine, full strength in her lower extremities, and imaging of Plaintiff's lumbar spine demonstrated only mild disc space narrowing. (Tr. 27-28, 31-32, 957-977) During the examination, Dr. Massay observed that Plaintiff was in no acute distress; had normal gait and stance; did not need assistance getting on and off the exam table; and could walk heel to toe and in tandem, hop on each foot but with pain in the knee, fully squat, and rise from her chair without difficulty. (Tr. 957-977) Plaintiff had normal straight leg raises and full range of motion. (Tr. 957-977) While Plaintiff had mild prominence of the DIP joints in her hands bilaterally she demonstrated no tenderness in her joints. (Tr. 957-977) Plaintiff's hand sensation, nerves, and reflexes were all normal. (Tr. 957-977) Plaintiff exhibited normal strength in her all of her extremities with the exception of mildly diminished grip strength in her hands. (Tr. 957-977) Imaging showed only mild disc space narrowing in her spine and ossification of the medial to the margin in the left knee but otherwise no other abnormalities, including in her hands. (Tr. 957-977)

The ALJ also found Dr. Massay's opinion was unpersuasive because it was inconsistent with the record as a whole. In particular, the ALJ found the medical evidence demonstrated that Plaintiff's physical examinations were frequently unremarkable and Plaintiff received only conservative treatment for her impairments. (Tr. 26-27) Shortly after Plaintiff's stroke in January 2018, clinical observations demonstrated Plaintiff maintained normal motor strength and coordination. (Tr. 26, 642-644, 697-703) During examinations between March and December 2018, Plaintiff was frequently asymptomatic, and physical examinations were unremarkable and revealed normal findings. (Tr. 26, 742-747, 818-819, 822-823, 842, 847, 851, 858)

During follow-up visits throughout 2019 Plaintiff exhibited slightly decreased grip strength in her hands bilaterally but otherwise Plaintiff's physical examinations were normal, including normal strength, tone, gait, station, orientation, behavior, and distress. (Tr. 26, 818-819, 822-823, 787-789, 793-794) While treatment notes from December 2019 noted carpal tunnel syndrome of the right wrist, there was no examination, imaging, or testing to support the finding, nor was there any symptoms such as swelling or tenderness to palpation and Plaintiff demonstrated normal deep tendon reflects, range of motion, grip, tone, and sensations. (Tr. 27; 873-874, 922, 932-33) Plaintiff's treating physician recommended only the use of wrist splints. (Tr. 27, 873-874, 922, 932-33) The ALJ found Plaintiff's follow-up visits for her impairments were sporadic, that her physical and mental examinations were often normal, and that more invasive measures were not recommended. (Tr. 27) Here, the ALJ's finding that Dr. Massay's medical opinion was unsupported by his examination and inconsistent with the other evidence of record is supported by substantial evidence in the record and Plaintiff provides no persuasive argument to the contrary.

Plaintiff's contention that the ALJ's RFC is not supported by substantial evidence because it relies upon "no supportive medical opinions" is also unavailing. The record contains medical

opinion evidence regarding Plaintiff's impairments and the functional limitations resulting from those impairments, and the ALJ's determination reflects that she considered this evidence in determining Plaintiff's RFC. Specifically, the ALJ stated in the decision that she considered the opinions of the three state agency consultants, Drs. Ceaser, Debroy, and Morgan, as well as the medical opinions of the consultative examiners Drs. Ahmad and Massay. (Tr. 27-32).

As already noted, Dr. Debroy concluded Plaintiff had the severe impairments of hypertension and diabetes mellitus, and the non-severe impairment of ischemic heart disease, but found no functional limitations as a result of these impairments. (Tr. 129-130) Dr. Ceaser and Dr. Morgan both concluded Plaintiff had no severe impairments. (Tr. 117-118, 119-120) These are effectively a finding that Plaintiff had no functional limitations and could perform the full range of work at any level.  See McReynolds v. Berryhill, 341 F. Supp. 3d 869, 880 (N.D. Ill. Oct. 20, 2018) (opinions of a consultative examiner that the claimant had no work-related limitations and state-agency physicians' opinion that the claimant had no severe physical impairment support a finding that the claimant had no limitations related to her impairments).

The ALJ also considered the medical opinions of Dr. Ahmad and Dr. Massay,  which each found Plaintiff suffered from severe impairments and functional limitations. The ALJ found Dr. Ahmad's opinion to be persuasive and relied upon his opinion in determining Plaintiff's mental RFC. While the ALJ ultimately concluded that Dr. Massay's opinion was unpersuasive, the ALJ considered Dr. Massay's clinical observations made during his examinations in evaluating Plaintiff's RFC and some of the RFC is consistent with portions of Dr. Massay's opinion.  (Tr. 31-32) For example, the ALJ's finding Plaintiff capable of medium work, which 20 C.F.R. §416.967(c) defines as "lifting no more than 50 pounds at a time with frequent lifting or carrying

of objects weighing up to 25 pounds," is consistent with Dr. Massay's opinion that Plaintiff could frequently lift and carry 50 pounds.

2. Plaintiff's Subjective Complaints

Plaintiff contends the ALJ's RFC determination was not supported by substantial evidence because the ALJ "discounted Plaintiff's testimony." [ECF No. 18] Plaintiff presents no specific argument in support of her assertion that the ALJ erred in assess Plaintiff's testimony of her disabling symptoms. The Commissioner responds the ALJ thoroughly reviewed the objective medical evidence and properly found that Plaintiff's complaints of disabling symptoms were not entirely consistent with the evidence. [ECF No. 22]

When determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective complaints with the evidence of record. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); SSR 16-3p, 2017 WL 5180304 (SSA. Oct. 2017). While an ALJ cannot ignore a claimant's subjective complaint, Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984), it may discount those complaints if "they are inconsistent with the evidence as a whole." Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015). In discounting a claimant's subjective complaints, an ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Renstrom, 680 F.3d at 1066. The Polaski factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints. Id. at 1065–66; see

also 20 C.F.R. § 416.929(c). While an ALJ must consider these factors, she need not discuss how each factor supports her determination. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007). If an ALJ "explicitly discredits" a claimant's complaints and "gives a good reason for doing so," a court should defer to her determination. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

Social Security Rule 16-3p, effective March 28, 2016, also sets forth factors relevant to the ALJ's evaluation of the intensity, persistence, and limiting effects of a claimant's symptoms and the ALJ's "analysis of whether a claimant's subjective complaints are consistent with the medical evidence." SSR 16-3p, 2017 WL 5180304 (SSA. Oct. 2017); Noerper v. Saul, 964 F.3d 738, 745 (8th Cir. 2020); Lawrence v. Saul, 970 F.3d 989, 995 (8th Cir. 2020). If a claimant makes statements about the intensity, persistence, and limiting effect of her symptoms, SSR 16-3p requires the ALJ to determine whether the statements are consistent with the medical and other evidence of record.  SSR 16-3p, 2017 WL 5180304, at *8; see also 20 C.F.R. § 416.929(c)(3) (explaining how the SSA evaluates symptoms, including pain). While SSR 16-3p eliminates the use of the term "credibility" in examining a claimant's subjective complaints and clarifies that the Commissioner's review is an examination for the level of consistency between a claimant's subjective assertions and the balance of the record as a whole, SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" under Polaski.[6] Noerper, 964 F.3d 738, 745 n. 3 (8th Cir. 2020).

---

[6] The SSR 16-3p factors are similar to the Polaski factors and include: (1) the claimant's daily activities; ( 2) the location, duration, frequency, and intensity; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) treatments other than medications; (6) other measures used to relieve symptoms; and (7) any other functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8.

SSR 16-3p also directs the ALJ to set forth specific reasons for the weight given to the claimant's symptoms and to identify and explain the consistencies and inconsistencies between the claimant's symptoms and the other evidence of record.  2016 WL 1119029, at *8-9. Furthermore, SSR 16-3p requires the ALJ to consider and discuss only those factors that are relevant to the assessment. 2016 WL 1119029, at *7. Compare Renstrom, 680 F.3d at 1066 (in evaluation of claimant's subjective complaints,

In assessing Plaintiff's RFC, the ALJ considered Plaintiff's reported conditions and symptoms, and found Plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 25) Specifically, the ALJ found Plaintiff's complaints of disabling symptoms were inconsistent with the medical evidence of record, including objective testing and treatment notes observing unremarkable or normal physical findings, Plaintiff's sporadic and conservative treatment, and Plaintiff's self-reported activities of daily living. (Tr. 25-32)

In making this assessment, the ALJ considered medical evidence demonstrating Plaintiff sought emergency room care for numbness in her right arm and face, with no associated weakness or pain, in January 2018. (Tr. 26, 636-644) Imaging was consistent with a subacute stroke but clinical observations were unremarkable, including normal motor strength and coordination. (Tr. 26, 641-644, 684, 697-703) Plaintiff was prescribed medication for secondary stroke prevention but was not given a 30-day event monitor given the likely small-vessel nature of a stroke in the thalamus. (Tr. 26, 703) During follow up examinations in 2018 and 2019, Plaintiff was frequently asymptomatic and, while Plaintiff exhibited slightly decrease grip strength bilaterally, Plaintiff's physical examinations were normal, including normal strength, tone, gait, station, orientation, behavior, and distress. (Tr. 742-747, 788-795, 818-819, 822-823, 842, 847, 851, 858)

The ALJ also noted that the medical records demonstrated Plaintiff received conservative care for panic attacks, anxiety, hypertension, and carpal tunnel syndrom during the relevant period.

---

the ALJ must consider all of the evidence and make an express determination, detailing her reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors set forth in Polaski, 739 F.2d 1320).

(Tr. 27, 806, 802-871, 873-874, 922, 932-33) The ALJ found Plaintiff's follow-up visits for her impairments were sporadic, that her physical and mental examinations were often normal, and that more invasive measures were not recommended. (Tr. 27)

During office visits related to Plaintiff's chronic kidney disorder and diabetes mellitus, Plaintiff's provider reported normal musculoskeletal, neurological, and psychological observations. (Tr. 27, 944-945) With respect to her diabetes, Plaintiff was diagnosed prior to her application date and she was treated with insulin management and recommended dietary and lifestyle changes. (Tr. 18, 571, 704, 587-634, 635-738, 739-773, 783-784) Medical records demonstrate that Plaintiff's A1c levels were stable and in the normal range until 2021 when Plaintiff A1c levels were above the normal range. (Tr. 18, 703, 728, 746-747, 775, 806, 819, 909-910, 945, 898) Following an episode in July 2021, Plaintiff's treating physician recommended Plaintiff regain control of her blood sugar level without any additional changes to her treatment and Plaintiff did not require any additional medical visits for complications related to her diabetes. (Tr. 18, 943-956) With respect to her chronic kidney disease, laboratory tests showed decreased eGFR readings, demonstrating reduced kidney functioning. (Tr. 19, 527) Plaintiff received occasional monitoring and recommendations for lifestyle changes, with monitoring showing Plaintiff's kidney functioning was generally stable. (Tr. 19, 749, 802-871) In January 2021, Plaintiff's kidney functioning experienced an episode of significant decrease in kidney functioning with bilateral renal atrophy. (Tr. 19, 909-942) Following treatment, medical records show Plaintiff's kidney functioning returned and improved. (Tr. 19, 900, 943, 1047-1049)

The ALJ also concluded Plaintiff's reported activities of daily living demonstrate Plaintiff could function in excess of her expressed limitations. (Tr. 29) Specifically, the ALJ noted that Plaintiff was generally independent and could attend to her personal care, complete household

chores, prepare simple meals, and complete financial transactions. (Tr. 29) Here, the ALJ provided good reasons for discounting Plaintiff's testimony and the Court defers the ALJ's determination, particularly in the absence of any specific argument by Plaintiff that the ALJ's reasoning was erroneous.

3.  Request for a Hearing

Plaintiff further contends the ALJ erred in assessing Plaintiff's RFC because the ALJ "failed to acknowledge or rule on Plaintiff's request for a supplemental hearing with a medical expert to help clarify the evidence of record." [ECF No. 18]

After the Appeal Council remanded the cause to the ALJ for further development of the record, the ALJ conducted two supplemental hearings, referred Plaintiff for a consultative physical examination, and accepted additional medical evidence. On May 19, 2022, the ALJ conducted the second supplement hearing at which Plaintiff and the vocational expert testified. (Tr. 84-95) The following day, May 20, 2022, Plaintiff's counsel sent a letter to the ALJ noting that additional medical evidence had been submitted and stating "[t]he record may now be closed subject to your authorization." (Tr. 515) In the letter, Plaintiff argued for a "favorable decision" of light work and stated:

> If you are not yet prepared to find that the combination of the claimant's physical impairments limit her to only a Light RFC, then the claimant respectfully requests a supplemental hearing with an Internal Medicine Medical Expert to testify about the claimant's work-related limitations that appropriately stem from her multiple physical impairments.

(Tr. 516)

Plaintiff's letter to the ALJ stating that "the record may now be closed" signifies Plaintiff's belief that an additional hearing and the submission of additional evidence was unnecessary. Plaintiff's "request" for an additional hearing appears to be an attempt to "hedge her bet" and was

23

conditioned solely upon the whether the ALJ was "prepared" to find in Plaintiff's favor. Plaintiff, however, has presented the Court with no authority in support of the proposition that an ALJ is required to hold hearings or accept evidence until the claimant presents enough evidence to convince the ALJ to issue a favorable decision.

Instead, the ALJ "has a duty to fully and fairly develop the evidentiary record." Byes v. Astrue, 687 F.3d 913, 915-16 (8th Cir. 2012). In some cases, the duty to develop the record requires the ALJ to obtain medical evidence, such as a consultative examination of the claimant, before rendering a decision. See 20 C.F.R. §404.1519a(b). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." McCoy, 648 F.3d at 612.

Here, the record contains approximately 500 pages of medical records collected from multiple sources over a number of years, the opinions of three state agency consultants from the prior administrative findings, the opinions of two consultative examiners, and the written interrogatories of a vocational expert. The ALJ conducted three hearings, at which Plaintiff testified at each and a vocational expert testified at two. The ALJ reviewed Plaintiff's medical records, the medical opinions, and the testimony before rendering her determination. The record contained substantial evidence of Plaintiff's physical conditions such that the record did not require further development. Given the substantial evidence of Plaintiff's physical impairments, this is not a case in which a crucial issue was undeveloped, and it was not necessary for the ALJ to conduct another hearing to obtain further evidence.

### 4. Light RFC

Plaintiff contends the ALJ's determination that Plaintiff was capable of medium work is not supported by substantial evidence and that the evidence supported an RFC of, at most, light

work. [ECF No. 18] In the initial determination, the ALJ found Plaintiff had an RFC to perform medium work. (Tr. 140) Following the Appeals Council's remand, Plaintiff submitted additional evidence and the ALJ found Plaintiff had additional severe impairments, including coronary artery disease, degenerative disc disease of the lumbar spine, left knee joint disease, and carpal tunnel syndrome. (Tr. 137, 17) Despite the identification of these additional impairments, the ALJ found Plaintiff was still capable of performing medium work and included only one new restriction of frequent handling bilaterally. (Tr. 137, 17) Plaintiff argues an RFC of medium work "does not logically follow" the identification of additional impairments and that ALJ should have assessed the more restrictive RFC of light work. [ECF No. 18] Plaintiff, again, fails to support her position. Plaintiff cites no authority suggesting that a finding of additional impairments mandates a more restrictive RFC nor does she articulate why the identification of these impairments necessitates an RFC of light work.

Here, the ALJ considered all of Plaintiff's impairments, including her "new" impairments, in determining Plaintiff's RFC.  Specifically, the ALJ considered the imaging and Dr. Massay's findings that the imaging of Plaintiff's lumbar spine showed mild disc space narrowing and that Plaintiff maintained disc spaces and bodies. (Tr. 28) The ALJ also considered the imaging of Plaintiff's knees, noting that it demonstrated ossification in the medical to the margin in Plaintiff's left knee from a previous injury but that no other abnormalities were present. (Tr. 28)  The ALJ concluded these "findings were consistent with the physical limitations as noted in the [RFC]" and were "generally consistent with the observations…made during the prior consultative examination in March 2019." (Tr. 28) The ALJ stated she limited Plaintiff to medium work due to her back pain and carpal tunnel syndrome, and placed additional exertional restrictions with respect to climbing based on Plaintiff's back and left knee pain. (Tr. 29) The ALJ found Dr. Massay's

objective findings during his consultative examination, including that Plaintiff's cardiovascular and respiratory findings were normal other than an elevated heart rate, further supported the RFC. (Tr. 27) Here, the ALJ considered these impairments in assessing Plaintiff's RFC and Plaintiff has provides no argument or support for finding that the ALJ erred in her assessment.  Upon review of the record as a whole, the Court finds substantial evidence supported the ALJ's determination that Plaintiff was capable to medium work with numerous exertional and non-exertional limitations.

C.  Severe Impairments

Plaintiff argues the ALJ erred in finding that Plaintiff's diabetes mellitus was not a severe impairment. [ECF No. 18]  The Commissioner counters that the ALJ did not error in concluding Plaintiff's diabetes mellitus was not a severe impairment because the treatment records demonstrate that Plaintiff's diabetes did not have a more than a minimal impact on her ability to do basic work activities. [ECF No. 22] Alternatively, the Commissioner argues that, even if the ALJ did err in finding Plaintiff's diabetes was non-severe, the error was harmless because the ALJ determined that Plaintiff had severe impairments at step two of the sequential analysis and considered all of Plaintiff's severe and non-severe impairments when determining Plaintiff's RFC. [ECF No. 22] No. 22]

At step two of the evaluation process, the ALJ must determine if a claimant suffers from a severe impairment. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). See also 20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is a medically determinable impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). Although the plaintiff has "the burden of showing a severe impairment that significantly limited [her] physical or mental ability to perform basic work activities[,] . . . the

burden of a claimant at this stage of the analysis is not great." Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001). See also Kirby, 500 F.3d at 708 ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard[.]") (internal citation omitted). A court may find that an error at step two, in failing to find a particular impairment severe, does not require reversal where the ALJ finds other severe impairments and considers all of the claimant's impairments, severe and non-severe, in the subsequent analysis. Cuthrell v. Astrue, 702 F.3d 1114, 1118 (8th Cir. 2013).

Here, the ALJ found Plaintiff had the severe impairments of anxiety disorder, adjustment disorder, coronary artery disease with residual symptoms status-post stroke, degenerative disc disease of the lumbar spine, left knee ossification in the region of the medial femoral condyle ligament, and bilateral carpal tunnel syndrome. (Tr. 17)  The ALJ also found Plaintiff had the non-severe impairments of hypertension, diabetes mellitus, blurry vision, hyperlipidemia, and chronic kidney disease. (Tr. 18, 20). In formulating Plaintiff's RFC, the ALJ considered all of Plaintiff's medically determinable impairments.  (Tr. 17-20, 24-323)  Thus, even if the ALJ erred in concluding that Plaintiff's diabetes mellitus was not a severe impairment at step two, such error was harmless because the ALJ considered all of Plaintiff's impairments, severe and non-severe, when formulating the RFC.

## VI.    Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of April, 2025